IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARK GALAZIN, | ) |
|           Petitioner, | ) |
| v. | ) No. 04-0625-CV-W-FJG |
| MICHAEL MURPHY, Superintendent, Algoa Correctional Center, and JEREMIAH NIXON, Attorney General of Missouri | ) |
|           Respondent. | ) |

# ORDER

## I. BACKGROUND

Currently pending before the court is Petitioner Mark Galazin's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2254 (Doc. # 1). Petitioner was found guilty of one count of felony driving while intoxicated and other charges after he was stopped and arrested in the town of Lakeview, Missouri[1]. The arresting officer was a Lake Ozark, Missouri police officer. The state trial court imposed sentence on Mr. Galazin and entered its judgment on November 15, 1999. The state trial court sentenced him to serve a four year term of imprisonment as this was his third offense[2]. Petitioner's direct appeal was addressed to the Missouri Court of Appeals which

---

[1] The Court notes that there is some confusion as to where the arrest actually occurred. In his postconviction proceedings, petitioner contends that the arrest occurred in Lakeland, Missouri whereas in his pleadings before the Missouri Supreme Court, he contended that it occurred in Lakeview, Missouri.

[2] The Court recently learned that petitioner had completed his sentence, but counsel for both sides have argued that this has no effect on petitioner's petition.

reversed the judgment of the state trial court on January 23, 2001. Transfer to the Missouri Supreme Court was granted on March 20, 2001. On October 23, 2001, the Missouri Supreme Court affirmed the conviction in State v. Galazin, 58 S.W.3d 500 (Mo. banc 2001). Petitioner filed a motion for post-conviction relief in the Miller County Circuit Court. He requested an evidentiary hearing which was held on June 5, 2002. Petitioner's motion for post-conviction relief was denied in its entirety on July 1, 2002. He appealed the denial to the Missouri Court of Appeals, but his appeal was unsuccessful. The Missouri Supreme Court entered its order denying his application for transfer on August 26, 2003.

Petitioner states that his detention by the State of Missouri is unlawful for two reasons:

1) He was deprived of due process and subjected to unreasonable search and seizure because his arrest was unlawful and all of the evidence stemming from his arrest was obtained unlawfully and should have been suppressed;

2) He was deprived of his right to effective assistance of counsel when his trial attorney failed to challenge the arrest and seek the suppression of all the post-arrest evidence as unlawful in a timely pretrial motion. But for this error, he argues it is probable that the court would have found the arrest unlawful, suppressed the evidence and dismissed the charges against him.

## II. DISCUSSION

**A. Exhaustion and Procedural Default**

The State argues that petitioner has failed to properly exhaust Claim One in the Missouri state courts and therefore the claim is now procedurally defaulted. In Armstrong v. State of Iowa, 418 F.3d 924, 925 (8th Cir. 2005), cert. denied, 2006 WL 386551 (2006), the Court stated, "[f]ederal habeas relief is available to a petitioner after he has exhausted the remedies available in the courts of the State. . . . To exhaust an available state post-conviction remedy, the petitioner must use the State's established appellate review procedures." (internal citations and quotations omitted). In Cox v. Burger, 398 F.3d 1025 (8th Cir.) cert. denied, 126 S.Ct. 93, 163 L.Ed.2d 109 (2005), the Court explained:

> A claim is procedurally defaulted if not fairly presented in state court before raising it in federal court. . . . To be fairly presented a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.

Id. at 1031 (internal citations and quotations omitted).

In his brief to the Missouri Court of Appeals, petitioner stated the issue as follows:

> The trial court erred in allowing Officer Scott Patrick of the Lake Ozark Police Department to testify over timely and proper objections as to his stop, observations and arrest of appellant because Officer Patrick had no authority nor jurisdiction to begin and end an arrest outside the City Limits of Lake Ozark, Missouri, in that there was no evidence of any contract, statute or other document presented to the trial court which authorized Officer Patrick to operate outside the City Limits, nor was there any showing of "fresh pursuit" such as might allow Officer Patrick to pursue

3

appellant from inside the City Limits.

(Respondent's Ex. C, p. 6).

The Missouri Court of Appeals in its Opinion stated:

> The circuit court found that Officer Patrick's testimony was admissible. When a defendant moves to suppress on the grounds of illegal search or seizure, the State has the burden of showing that the motion should be denied. We are limited to determining whether there is sufficient evidence to support the court's ruling based on the whole record before the trial court.
> . . .
> Mr. Galazin filed no motion to suppress the evidence, but his objections during trial were clearly based on the officer's authority to effect the arrest, i.e. the constitutionality of the seizure.

(Respondent's Ex. F, pp. 7-9).

In his Traverse, petitioner argues that the Missouri Court of Appeals explicitly recognized his direct appeal claim as one calling into question the constitutionality of an arrest that he claimed was illegal.

The Court agrees with the State that this claim is procedurally defaulted. The case law specifically states that the petitioner must refer to the "specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Ford v. Norris, 364 F.3d 916, 919 (8th Cir. 2004). It is clear that the petitioner did not do so in this case.

**B. First Claim**

However, even if this claim were not procedurally defaulted because of the reference in the Court of Appeals opinion to the constitutionality of the arrest, petitioner's claim would still fail. As the State notes, in Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037 (1976), the Supreme Court held that "where the State has provided

4

an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." In Palmer v. Clarke, 408 F.3d 423 (8th Cir.), cert. denied, 126 S.Ct. 755, 163 L.Ed.2d 588 (2005), the Court stated:

> Thus, we will review a Fourth Amendment claim raised in a habeas petition only if either 'the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.' Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994)(en banc).

Id. at 437. Petitioner does not address this issue in his Traverse. Therefore, because it is apparent that petitioner was provided an opportunity to raise his Fourth Amendment claim and because the Missouri Supreme Court addressed petitioner's Fourth Amendment claim in their opinion, this Court need not reexamine that court's decision.

**C. Second Claim**

In his second ground, petitioner argues that he was deprived of his right to effective assistance of counsel when his trial attorney failed to challenge the arrest and seek the suppression of all the post-arrest evidence as unlawful in a timely pretrial motion. Petitioner alleges that but for this error, it is probable that the court would have found the arrest lawful, suppressed the evidence and dismissed the charges against him.

1. Standard of Review

In Osborne v. Purkett, 411 F.3d 911 (8th Cir. 2005), cert. denied, 2006 WL 685223 (2006), the Court noted:

5

> A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1)(2000). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state-court decision is an "unreasonable application of" clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08, 120 S.Ct. 1495.

Id. at 914.

2. Discussion

In Barajas v. Minnesota, No. 05-856DSDRLE, 2006 WL 562142 (D.Minn. Mar. 7, 2006) the Court noted:

> Whether [the Petitioner] was deprived of his right to effective assistance of counsel is analyzed under the familiar two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984). . . . Under that test, the Petitioner must first show that counsel's conduct fell below an objective standard of reasonableness, and then must show that counsel's alleged ineffectiveness prejudiced the defense. . . .In order to show prejudice, a habeas petitioner must establish that there is a reasonable probability that but for counsel's unprofessional errors, the result . . . would have been different. . . . The Court must look at the evidence before the Judge, or Jury, as a whole, in order to determine the effect of any alleged attorney errors. . . . The ultimate focus of the inquiry is fundamental fairness in the proceeding, with relief granted only where there has been a breakdown in the adversarial process.

Id. at *4 (internal citations and quotations omitted).

The Missouri Court of Appeals in ruling on petitioner's appeal from the denial of his Rule 29.15 motion for postconviction relief stated as follows:

> Galazin's burden was to establish by a preponderance of the evidence that Cisar [Galazin's trial counsel] provided ineffective assistance of counsel. Rule 29.15(I). He was obligated to show that Cisar "fail[ed] to

6

exercise the customary skill and diligence that a reasonably competent attorney would [have] exercis[ed] under similar circumstances," and that Cisar's failures prejudiced his case. State v. Harris, 870 S.W.2d 798, 814 (Mo. banc), cert. denied, 513 U.S. 953 (1994); Strickland v. Washington, 466 U.S. 668, 687 (1984).

(Respondent's Exh. Q, pp. 1-2).

The Court of Appeals considered the evidence and determined that petitioner did not prove that the a motion to suppress would have been successful. The Court of Appeals found that petitioner did not satisfy his burden of demonstrating that the officer did not have authority to make the arrest . The Court of Appeals deferred to the circuit court regarding the factual determinations as to where the pursuit began and how long it lasted. The Court of Appeals found that the Circuit Court's findings and conclusions were not clearly erroneous.

The State argues that petitioner's second claim fails because the Court of Appeals applied the correct standard - the Strickland test and thus their decision was not contrary to a Supreme Court precedent. Secondly, the State argues that the denial of this claim was a reasonable application of clearly established federal law because petitioner failed to satisfy the prejudice prong - he failed to show that but for his counsel's errors, the result would have been different. Additionally, the State notes that during the evidentiary hearing on his motion for postconviction relief, his trial counsel testified as follows:

> Q. Is it not true that it's your belief that if you had filed a motion to suppress due to not having an agreement between the city of Lake Ozark and Lakeview, that such agreement would have been produced at the motion to suppress?
> A. Yes, that is my belief, had I filed a motion to suppress, it would have – on the issue, it would have alerted the State to my defense on that issue of they cannot provide adequate foundation for the officer's testimony at trial.
> Q. So was it your choice to reserve that argument for trial in the hope that a

proper foundation would not be laid?
A. Yes.
Q. And, in fact, you made an objection at the trial based on your beliefs that that foundation had not been made; is that correct?
A. Yes.

(Resp. Exh. L. , p. 12).

The State argues that Mr. Cisar's decision not to file a timely pre-trial motion to suppress was a strategic decision and that such strategies cannot constitute ineffective assistance of counsel, even if they fail. (Respondent's Brief, p. 14, citing Flieger v. Delo, 16 F.3d 878, 886 (8th Cir. 1994), cert. denied, 513 U.S. 946, 115 S.Ct. 355 (1994)).

Petitioner responds in his Traverse by arguing that there was substantial proof that a timely pre-trial motion would have been successful. Petitioner states that the evidence presented during the post-conviction motion hearing provided ample basis for a finding that the arrest was made without jurisdiction. Petitioner argues that this evidence which the Court of Appeals recognized "cast doubt on the officer's jurisdiction" was incapable of supporting a finding that the arrest was made within the officer's jurisdiction. Petitioner states that the findings and outcome of his post-conviction hearing are inadequate to meet the standard set forth by Williams v. Taylor, 529 U.S. 362 (2000). Petitioner argues that the Missouri Court of Appeals applied the governing Constitutional rule unreasonably to the facts of his case. He argues that it was unreasonable for the State to contend that when the evidence created a doubt about the authority of a police office to make the challenged arrest, and at best required speculation regarding whether such authority existed, that a finding that no Constitutional violation occurred is an unreasonable application of the governing rule to

8

the facts in this case.

The Court disagrees and finds that the evidence shows that there was no doubt regarding the legality of the arrest and the Court of Appeals was not forced to speculate about whether the officer had jurisdiction to make the stop. Petitioner focuses on the portion of the Court of Appeal's opinion which states:

> Galazin contends that [Officer] Patrick did not initiate his pursuit until he was in Lakeland. He relies on Patrick's testimony that, after he turned on his lights and siren, Galazin drove one-eighth to one-quarter mile down the street and stopped in the area of the Lakeland Market. At the evidentiary hearing, Galazin presented the testimony of the city clerk of Lake Ozark that the border between Lakeland and Lakeview was one-quarter mile south of the Lakeland Market. Galazin claims that Patrick's testimony proves that he did not start his pursuit until he was in Lakeland. We disagree.
>
> The circuit court found that the pursuit lasted "approximately one-quarter mile" and that the fresh pursuit doctrine was applicable. If Patrick activated his lights and sirens at one-quarter mile before Galazin stopped his vehicle, as the circuit court found, Patrick would have been in Lakeview - albeit at the border. His pursuit would have begin in Lakeview even though he crossed the border into Lakeland soon after his pursuit began. Such satisfies the requirements of the fresh pursuit statute. Given Patrick's testimony, we cannot say that the circuit court's findings and conclusions are clearly erroneous.
>
> Galazin merely attempts to cast doubt on the circuit court's findings by relying on Patrick's testimony that he may have activated his lights one-eighth of a mile from where Galazin stopped. Granted, such evidence casts doubt on the officer's jurisdiction, but the circuit court found that the pursuit was approximately one-quarter mile and that the fresh pursuit doctrine was applicable. Hence, it necessarily rejected the evidence that the pursuit began one-eighth of a mile from where Galazin stopped, and we do not have a definite and firm impression that the circuit court made a mistake.

(Respondent's Exh. Q, pp. 5-6).

In <u>Barajas</u>, the Court noted that "Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State

Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary." Id. at *4. The above quoted passage of the Court of Appeals' decision discusses the factual determinations made by the Circuit Court regarding where the pursuit began and ended and how long it lasted. The Court does not find that the petitioner has rebutted these factual determinations by clear and convincing evidence. Thus, the Court does not find that the Court of Appeals' unreasonably applied the facts to Mr. Galazin's case in determining that the outcome would have been the same even if his counsel had filed a timely pretrial motion to suppress. Accordingly, the Court hereby **DENIES** petitioner's petition for a writ of habeas corpus on his claim of ineffective assistance of counsel.

### III. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Petitioner's petition for a Writ of Habeas Corpus. (Doc. # 1).

Date: March 21, 2006  **/S/ FERNANDO J. GAITAN JR.**
Kansas City, Missouri  Fernando J. Gaitan Jr.
United States District Judge